## GLEASON'S ADMINISTRATRIX vs. BURKE.

1. One may convey lands for a certain price, and agree to repurchase them at a fixed time, for a certain amount exceeding the price received, and interest, without the sale being construed a mortgage, or the transaction being affected with usury.

2. But such transactions are suspicious, and will not be sustained unless there is clear proof of good faith, and that there was no intention to cover usury, or to take away the right of redemption upon what was in truth a mortgage to secure a loan.

3. An agreement by a borrower upon mortgage, to allow the lender to retain part of the land mortgaged, after being repaid principal and interest of the loan, if it is a part of the mortgage transaction, is usurious, and will not be enforced, either at law or in equity.

4. But if such an agreement is independent of the loan and mortgage, and not made in consideration of the loan, or the condition of its being made, and capable of being sustained without reference to them, either as a sale on consideration or as a gift, it may be enforced. And, though the agreement was not in writing, effect will be given to it by limiting the quantity of land to be reconveyed, on ordering redemption.

This cause was heard upon bill, answer, and proofs.

*Mr. S. B. Ransom,* for complainant.

1. The assignment of the lease by complainant's intestate was intended as a mortgage to secure the loan of $1500. This is fully established by the evidence. And as the loan has all been repaid, the complainant is entitled to a re-assignment of the lease, with costs.

2. The pretended agreement set up in the defendant's answer, by which complainant's intestate is claimed to have

.agreed to accept a re-assignment of only seventy-five feet of the lot, and to pay all taxes, water rents, assessments, and ground rents on the whole lot, during the whole continuance of the lease and of the renewal, if any such thing was ever assented to by the intestate, was a contract without consideration, and void.

It was an unconscionable contract, and such a one as a court of equity will not enforce.

The only consideration for it was the loan of $1500. That loan, with the legal interest, has all been repaid, and, in addition thereto, the complainant has already paid about $500 in ground rents, taxes, and assessments upon the twenty-five feet of the lot on which defendant has built his house, and the rents, issues, and profits of which he has received.

To enforce this contract against the complainant would compel her to continue to pay ground rents, taxes, and assessments on this twenty-five feet of the lot, for the benefit of defendant, for twenty years to come, without any benefit to her whatever. To enforce such a contract against the complainant would be most manifestly inequitable and unjust.

3. But this pretended agreement, if ever actually made by the intestate, of which I think there is some doubt, was .a mere subterfuge, to evade the usury laws; a mere contrivance to give the defendant twenty-five years' use of the twenty-five feet of land, free and clear of all ground rents, taxes, assessments, and other impositions, as a bonus for the loan of $1500, over and above the seven per cent. lawful interest, and for that reason is absolutely null and void.

The ground rents alone, on this part of the lot, during the continuance of the lease and renewal, would amount to $1250; and taxes, assessments, and water rents would amount to nearly as much more. This is a very heavy premium to pay for the use of $1500 for five years.

See statute against usury; *Nix. Dig.* 437, § 2; *Grosvenor* v. *Flax and Hemp Manufacturing Co.*, 1 *Green's C. R.* 453, 456; *Douglass* 736; 1 *Espin. R.* 40; 2 *Camp-*

*bell* 335, 553; 1 *Paige* 613; 12 *Wend.* 41; 1 *Stark. on Ev.* 47; 18 *Wend.* 353; *Blydenburgh on Usury*, 42, 43, 44, 48, 49, 50; *Morgan* v. *Schermerhorn*, 1 *Paige* 544; *Eagleson* v. *Shotwell*, 1 *Johns. C. R.* 536; *Perkins* v. *Drye*, 3 *Dana* 173; *Ranis* v. *Kemp*, 4 *Louisiana R.* 319; *Mitchell* v. *Preston*, 5 *Day* 100; *Braynard* v. *Hoppock*, 32 *N. Y.* 571; *S. C.*, 7 *Bosw.* 157; *White* v. *Ault*, 19 *Ga.* 551; *Cummins* v. *Wire*, 2 *Halst. C. R.* 73.

*Mr. Gilchrist*, Attorney-General, for defendant.

THE CHANCELLOR.

The complainant's intestate, in April, 1862, leased of H. M. Post a lot of land of twenty-five feet by one hundred feet, at the southeast corner of Prospect and North First streets, in Jersey City, for the term of fifteen years, with a provision for a renewal for ten years longer. He leased it for the purpose of erecting upon it a building for his business, to front on North First street. He applied to Burke, with whom he had been in the habit of dealing, for a loan of $1500 for that purpose. Burke agreed to advance this loan after he should have expended $500 on the building. Gleason proposed to secure it by mortgage, but upon applying to Mr. Clark, the counsel of Burke, to arrange the matter, he advised that a mortgage should not be taken, but that for the $1500 Gleason should assign the lease; to this Gleason assented, and executed the assignment on June 1st, 1862, absolute on its face, reciting the consideration of $1500. Before this assignment was made, Gleason had offered to Burke to let him put up a building on twenty-five feet of the rear of the lot without charge, and that he, Gleason, would permit Burke to occupy that part during the whole term, and he would pay the rent, taxes, and assessments for and upon the whole lot, so that it should not cost Burke anything. He alleged as the ground of this offer, that this rear part was of no value to him, and that such a building would bring business to him and add to the value of his premises.

At or shortly after the assignment of the lease, it was agreed that Gleason should pay the $1500 by semi-annual instalments of $125, until the same and all interest on it should be paid; and that upon such payment, Burke should re-assign to Gleason the lot, except the twenty-five feet of the rear, which he should retain for the residue of the term and the renewal; and it was agreed that for the term and its renewal, Gleason should pay all rents, taxes, and assessments on the whole lot. This agreement was made by parol only, but was to be reduced to writing and signed; it was reduced to writing by Mr. Clark, but both parties neglected to sign it. After the assignment of the lease, Gleason finished his house, and Burke advanced the loan as needed for that purpose. Burke built a house on the twenty-five feet, on which he expended about $1800; it was finished in the fall of that year, after Gleason's house was finished; both were being erected at the same time. Burke has since received the rents of the rear building, amounting to about $1800, and Gleason and the complainant have paid all rents, taxes, and assessments for the lot. Gleason died in October, 1865, and until his death continued dealing with Burke, who sold him the goods used in his business, on credit.

After the complainant became administratrix, she tendered to Burke the balance of the loan and the interest accrued on it, and demanded a re-assignment of the lease. Burke refused to accept the payment or to re-assign the lease, unless he retained the twenty-five feet of the rear of the lot, and complainant would agree to pay all the rents, taxes, and assessments for the whole lot for the residue of the term; this she refused to do.

Upon this, complainant brought this suit, alleging that the assignment of the lease is a mortgage only, and that she is entitled to redeem the whole premises, and praying for a re-conveyance, upon paying the amount of the loan still unpaid, with interest, and upon paying the amount expended by Burke for the building on the twenty-five feet, above the

amount received by him for rents, of both which she prays an account may be taken.

The defendant contends that this was an absolute sale of the lease, with an agreement to convey part of the premises upon payment of $1500 and interest.

One may convey lands for a certain price, and agree to re-purchase them at a fixed time, for a certain amount exceeding the price received, and the interest, without the sale being construed a mortgage, or the transaction being affected with usury. But such transactions are suspicious; they are an easy cloak for usury, and their *bona fides* must be clear, and the court must be satisfied that it was not intended to cover usury, or to take away the right of redemption upon what was, in fact, intended as a mortgage to secure a loan. Courts of equity are very jealous of every device or contrivance intended to take away the right of redemption of what is the security for a loan. And one proof that the formal conveyance was intended as a mortgage only, is that the transaction commenced by negotiations for a loan, and conveying the land as security for the loan. In this case, the original agreement was for a loan, and the property was offered by way of mortgage, and the form only was changed at the suggestion of counsel. The transaction must be considered as a mortgage only, and not as a sale and agreement to re-convey part on payment of a fixed sum. Another indication of the transaction being a mortgage, existing in this case is, that Gleason agreed to pay back the principal and interest, at fixed times.

In a mortgage, any agreement to pay more than the sum loaned and lawful interest, is usury; so also must an agreement to allow the lender to retain part of the land mortgaged after being repaid the loan in full, be treated as usurious; and neither will be enforced by courts of law or equity. If this was the whole of this transaction the complainant would be entitled to the full relief sought.

But a borrower and lender may lawfully make other bargains even relating to the mortgaged property, and if they

are not in consideration of the loan, or the condition of its being made, and are otherwise lawful, they may be enforced.

If Gleason had not borrowed money of Burke, he might lawfully have given him without consideration the right to occupy part of his lot for the term, on the conditions here agreed upon; and if Burke had erected the building in accordance with the gift, the gift would be valid, and would be enforced in equity. In this case it needed no agreement in writing, the legal title to the land for the term was in Burke, by the assignment; and effect can be given to it by limiting the quantity of land to be re-conveyed, in ordering redemption according to the actual agreement between the parties. It is certainly a case in which the gift should be shown by clear proof. But it is sustained by the testimony of Scott and Burke, and the subsequent agreement in conformity with it is proved by Clark, and by the fact that Gleason, in his life, permitted Burke to build, to rent the building, and receive all the rents, while he paid all the ground rent and the taxes and assessments for the whole lot. These facts, and the testimony of Clark, are consistent with the fact that the gift of the twenty-five feet was a usurious premium for the loan. But the evidence of Burke and Scott shows that the gift was made for other reasons, and was not connected with the loan, or a condition of its being made. There is no evidence, and no circumstance to contradict or impeach these witnesses.

The complainant is entitled to a re-conveyance of the seventy-five feet of the north part of the lot, upon being paid the balance of the $1500 unpaid with interest, and upon executing an agreement making that part liable for the ground rent, taxes and assessments on the whole lot, but not for taxes and assessments on the rear building.